## Case No. 10,100.

In re NELSON.

[9 Ben. 238; [1] 16 N. B. R. 312.]

District Court, D. Vermont. Oct. 1877.

LIEN OF EXECUTION CREDITOR — ASSIGNEE AS SHERIFF.

Where an assignee in bankruptcy had possession of goods of the bankrupt at the time of

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

the bankruptcy. as sheriff. under a writ of attachment, and various executions obtained by creditors before the filing of the petition. and as assignee had converted the property into money, and the execution creditors were not parties to the bankruptcy proceedings. but agreed in writing that the facts stated in the petition were true, and that the court might make such order as to the disposition of the funds as may be according to law: *Held*, that the bankruptcy proceedings did not enlarge the judgment liens nor change their place, by the dissolving of the attachment and the vesting the property in the assignee, but left them covering all the property in the hands of the officer not covered by the attachment lien.

[In the matter of M. J. Nelson, a bankrupt.]

Prout & Walker, for assignee.

E. J. Ormsbee, for execution creditors.

WHEELER, District Judge. This proceeding has been commenced by a petition of the assignee, setting forth that at the commencement of the proceedings in bankruptcy, he,. as deputy sheriff, had custody of the goods of the bankrupt by virtue. first, of an attachment on an original writ in favor of Keyes & Co., in a suit in their favor against the bankrupt then and at the same time of the petition still pending; second, of other subsequent attachments and executions in suits in favor of other plaintiffs against the bankrupt, in which they had respectively recovered judgment, and placed execution in his hands in season to change the property, and praying for a determination of the rights of the parties in respect to the property at the time of the commencement of the proceedings, and of their rights now in respect to the sum of three hundred and eleven dollars and one cent, into which, as assignee, he has converted the property and still holds in lieu of the property. None of these execution creditors appear to be parties to the bankruptcy proceedings, nor are they claiming in any manner under them, but are claiming in hostility to them, and for that reason this petition could not be maintained against them as an adversary proceeding.

In order to maintain a proceeding in invitum to have the rights of parties so interested adjudicated upon, it would be necessary to proceed by regular writ at law or in equity, according to the nature of the case and the relief sought. But in this case the execution creditors have come in and agreed in writing that the facts stated in the petition are true, and that "the court may upon said petition make such order and decision as to the disposition of the fund" as may be according to law. In section 5011. Rev. St. U. S., it is provided that in any proceedings within the jurisdiction of the court "the parties concerned, or submitting to such jurisdiction. may at any stage of the proceedings, by consent state any question in a special case for the opinion of the court, and the judgment of the court shall be final. unless it is agreed and stated in the special case that either party may appeal if in such case an appeal is allowed," etc. In this special case

17FED.CAS.—83

the parties have submitted to the jurisdiction and stated questions in the case, and so the questions submitted are regularly before the court.

At the commencement of the bankruptcy proceedings the goods were the general property of the bankrupt, subject to a first lien by the attachment of Keyes & Co., and to a second and subsequent lien, by virtue of the executions of the attaching creditors. By force of the provisions of section 5044, Rev. St. U. S., the title to the property vested in the assignee. and the attachment of Keyes & Co., having been made within the prescribed time. was dissolved. The liens in favor of the judgment creditors were valid and perfect, the executions having been delivered to the officer within thirty days, according to the provisions of the Vermont statutes (Gen. St. 303, § 94), and he having the actual possession of the property. These judgment liens were not at all affected by the bankruptcy proceedings. Thus far there is no difficulty or real difference between the claims of the counsel of the respective parties. The real question is as to how and where the judgment lien stood when the attachment lien was dissolved. and the property subject to the judgment liens was vested in the assignee. The petitioning creditors and assignee. in behalf of the bankrupt estate, claim that the attachment lien was equal in amount to the ad damnum in the writ, which is four hundred dollars, and, as that was greater than the amount of the property, covered the whole property and left no room for the judgment liens, and that its dissolution created no room for them. The judgment creditors claim that the dissolution of the attachment made room for their liens, and that. as their liens were subject to the attachment only, as soon as that was dissolved their liens took its place and covered the whole. But neither of these claims is thought to be well founded to the full extent. Keyes & Co. had a valid lien by attachment which could not as to damages exceed four hundred dollars, for that was the extent of their claim at that time, although the court where the suit was pending might, if within its jurisdiction. raise the ad damnum so as to permit them to recover more. The ad damnum would not limit the recovery for costs at all, and that recovery might make the whole much beyond four hundred dollars, and extend the lien as far, unless it was limited by the direction in the writ as to the value of the property to be attached, which might be beyond the ad damnum, if the authority issuing it saw fit to make it so.

It is not stated in the special case what the amount directed to be attached was. But whatever it may have been the attachment lien would not be measured by it. but would only be limited by it. The measure of their lien was the amount of their debt or claim sued for and their lawful costs of the suit to that time.

To the extent of that attachment lien the judgment liens were restricted, and as far as that covered the property they did not. The same thing that dissolved the attachment vested the property in the assignee subject to the executions. There was no space of time after the attachment was gone and before the property was vested in which the judgment lien could move, or be moved up to take its place.

The bankruptcy proceedings did not enlarge the judgment liens nor change their place, but left them exactly as and where they were before. Before, they covered all of the property in the custody of the officer not covered by the attachment lien. After, they covered all the same property in the hands of the assignee, not covered by the right, which before was the attachment lien, and was then vested in him. This leaves to the judgment creditors exactly their rights and gives to the other creditors exactly theirs. These conclusions are in accordance with the opinions of Dyer, J., upon similar questions in Eastern district of Wisconsin. In re Steele [Case No. 13,345]. The judgment liens stand valid in the order of their attachments. The amount of the demand of Keyes & Co., and costs to the time of adjudication, does not appear.

The cause is referred to the register having charge of the case to ascertain the amount of the demand of Keyes & Co., with costs to the time of the commencement of bankruptcy proceedings, and when that amount is ascertained the assignee is to hold so much of the sum of three hundred and eleven dollars and one cent as is equal to it for the estate of the bankrupt and to pay over the balance to the execution creditors, so far as the same will go, in the order of their attachments, in satisfaction of their judgments.